608 S.E.2d 471

**William A. LENZ, Respondent,**

v.

**James L. WALSH, individually and as Trustee of the James L. Walsh Revocable Trust, and Marsha L. Walsh, individually and as Trustee of the Marsha L. Walsh Revocable Trust, Appellants.**

No. 3930.

Court of Appeals of South Carolina.

Heard Dec. 14, 2004.

Decided Jan. 24, 2005.

604

Charles Craig Young, of Florence, and J. Calhoun Land, IV, of Manning, for Appellants.

Marvin E. McMillan, Jr., of Sumter, for Respondent.

GOOLSBY, J.:

James L. Walsh and Marsha L. Walsh appeal from the master's ruling denying them recovery on their counterclaims against William A. Lenz, an unlicensed residential builder who was hired to construct their home. The Walshes contend the master erred in finding they could not recover on their counterclaims because they failed to prove damages in excess

of the amount of the final unpaid draw due Lenz under the contract. They argue the master's finding effectively violates the South Carolina statute that prohibits an unlicensed residential builder from enforcing a construction contract. We affirm.

## FACTS

On March 30, 1996, the Walshes entered into a contract with Lenz to construct their home in the Wyboo Plantation subdivision of Manning, South Carolina. Lenz signed the document listing himself as the "contractor." The contract price was $120,960.00, with payments to be made in regular installments or "draws." The house was to be constructed according to plans and specifications attached to the contract. Lenz granted the Walshes allowances for the purchase of certain items used in construction of the home, such as cabinets, flooring, countertops, and appliances. The Walshes were responsible for paying any amount over the stated allowance. All other materials were included in the contract price.

Lenz obtained a building permit on April 10, 1996 and began construction on the home. During construction, the Walshes made changes in some of the materials for the home and often purchased items themselves without going through Lenz. Some of the materials the Walshes purchased, such as plumbing fixtures, light fixtures, and cabinets, were provided for either as part of the contract price or as a stated allowance. Lenz and the Walshes had some disagreements, and Lenz eventually halted construction after the Walshes failed to pay the amount he requested in a June 1997 letter for overages incurred for additional work and materials. The Walshes never paid the fifth and final draw of $18,000.00 due on the contract. The Walshes prohibited Lenz from coming on the property when the house was approximately ninety-five percent complete. The Walshes thereafter spent $2,792.65 on labor and $1,267.91 on materials to complete the house.

In August 1997, Lenz filed a notice for a mechanic's lien and a complaint for foreclosure of the lien and breach of contract. Lenz sought $14,377.58 for unpaid amounts due for construction of the home.

The Walshes answered, denying any amount was due, and counterclaimed for damages for breach of contract, fraud, and intentional infliction of emotional distress. They sought to recover amounts they personally expended for the construction of the house and also sought damages for alleged delays in construction.

The Walshes subsequently moved for summary judgment as to Lenz's complaint on the ground he was not a licensed residential builder as required by the South Carolina Code and was, therefore, statutorily prohibited from enforcing the contract. By order filed March 22, 1999, circuit court Judge Howard P. King granted the Walshes' motion and held Lenz was prohibited by then-section 40–59–130 of the South Carolina Code[1] from pursuing any claim against the Walshes on the contract because he was not a licensed residential builder when he entered the contract.

The case was thereafter referred to a master-in-equity, Ralph F. Cothran, who held a hearing and thereafter concluded in an order dated January 22, 2002 that the Walshes were not entitled to recover on any of their counterclaims.

The master found Lenz had provided labor and materials in the amount of $13,695.58 that remained unpaid. He also noted there was no dispute concerning the Walshes' failure to pay the $18,000.00 final draw due on the contract. Because the Walshes refused to allow Lenz to complete the house, the master prohibited the Walshes from recovering the amounts they paid for labor and materials to complete construction. The master further found many of the items the Walshes purchased were provided for as allowances in the contract or were items outside the contract that they voluntarily purchased. The master concluded "[t]hat the damages alleged and proven by the [Walshes] do not exceed the unpaid amount of the final draw in the amount of $18,000.00 and the [Walshes] therefore are not entitled to any recovery on their counterclaim." The Walshes filed a motion to alter or amend the judgment, which was denied.

---

1. All references in this opinion are to former section 40–59–130, which at the time of the court's order was codified at S.C.Code Ann. § 40–59–130 (Supp.1999). Section 40–59–130 has since been amended and recodified by 2002 Act No. 359, § 1 and is now found at S.C.Code Ann. § 40–59–30 (Supp.2004).

## LAW/ANALYSIS

On appeal, the Walshes contend the master erred in finding they are not entitled to recover on their counterclaims because any damages they sustained did not exceed the final payment of $18,000.00. They argue this finding effectively allows Lenz to recover under the contract in violation of South Carolina statutory law that prohibits an unlicensed residential builder from enforcing a construction contract. We disagree.

Former section 40–59–130 proscribed an unlicensed residential builder from enforcing a construction contract. The statute provided in relevant part as follows:

Any residential builder or residential specialty contractor who undertakes or attempts to undertake the business of residential building or residential specialty contracting without first having procured a valid license or registered with the commission as required ... is guilty of a misdemeanor....

A residential builder who does not have a license or residential specialty contractor who is not registered as required *may not bring any action either at law or in equity to enforce the provisions of any contract for residential building or residential specialty contracting* which he entered into in violation of this chapter.[2]

South Carolina courts have held that, pursuant to the statute, a builder who is not licensed at the time he enters into a contract for residential construction may not bring an action to enforce the provisions of the contract.[3] The purpose of the statute is to protect homeowners.[4] Our supreme court has stated that, because the statute is plain and unambiguous, it should be applied literally; thus, where a builder has no license, he may not enforce the contract.[5]

---

2. S.C.Code Ann. § 40–59–130 (Supp.1999) (emphasis added).

3. *See, e.g., Columbia Pools, Inc. v. Moon,* 284 S.C. 145, 325 S.E.2d 540 (1985); *Duckworth v. Cameron,* 270 S.C. 647, 244 S.E.2d 217 (1978); *Wagner v. Graham,* 296 S.C. 1, 370 S.E.2d 95 (Ct.App.1988).

4. *See Burry & Son Homebuilders, Inc. v. Ford,* 310 S.C. 529, 426 S.E.2d 313 (1992).

5. *Duckworth,* 270 S.C. at 649, 244 S.E.2d at 218.

Although our courts have decided the aforementioned cases involving attempts by unlicensed contractors to enforce residential construction contracts, this state has never addressed whether a homeowner may recover payments made to an unlicensed builder under a residential construction contract. North Carolina has considered the question, however, and held in *Hawkins v. Holland*[6] that such payments are not recoverable.

In a case of first impression involving the consolidation of several suits presenting the same issue, the Court of Appeals of North Carolina observed in *Hawkins* that the grounds for the holdings in other jurisdictions are (1) the statutes requiring licenses do not specifically authorize the recovery of money paid; (2) such laws are penal in nature and must be strictly construed; (3) the specification of particular penalties precludes the addition of other penalties by judicial interpretation; (4) allowing the recovery of such payments is not necessary to effectuate the policy of licensing statutes; and (5) equity and the principles of restitution do not require that unlicensed contractors be completely uncompensated or that contracting homeowners receive the completed construction without cost.[7]

■ South Carolina case law provides support for the same reasoning.[8] We, therefore, find *Hawkins* persuasive and agree with its determination that, generally, a homeowner may not recover payments already made to an unlicensed contractor merely because the contractor did not hold a license when the contract was executed.

In the current appeal, it is undisputed that Lenz may not bring an action to enforce the contract pursuant to former section 40–59–130 since he was not licensed at the time the

---

**6.** 97 N.C.App. 291, 388 S.E.2d 221 (N.C.Ct.App.1990).

**7.** *Id.* at 222–23.

**8.** *See, e.g., Hodges v. Rainey,* 341 S.C. 79, 86, 533 S.E.2d 578, 582 (2000) ("The canon of construction *'expressio unius est exclusio alterius'* or *'inclusio unius est exclusio alterius'* holds that 'to express or include one thing implies the exclusion of another, or of the alternative.' ' ' ' " quoting Black's Law Dictionary 602 (7th ed.1999)); *Rorrer v. P.J. Club, Inc.,* 347 S.C. 560, 556 S.E.2d 726 (Ct.App.2001) (stating it is well established that penal statutes must be strictly construed).

contract was entered into. At issue now is the Walshes' counterclaims. The Walshes argue the master's ruling that they could not recover on their counterclaims because they failed to prove damages in excess of the final unpaid draw effectively allows Lenz to bring an action to enforce the contract in contravention of the statute.

We hold this situation is analogous to *Hawkins*, wherein the homeowners were seeking reimbursement for payments previously made. The Walshes voluntarily paid for many items that were either outside the contract or were to be purchased by the builder under the contract. Regardless of whether they paid for these items out of pocket or paid the builder a draw under the contract, the sums spent by the Walshes went towards materials provided for in the contract and those used in construction of the house. Allowing the Walshes to recover these sums would be indistinguishable from allowing them to recover money paid directly to the builder to purchase construction materials. Consequently, the decision of the master is

**AFFIRMED.**

HEARN, C.J., and WILLIAMS, J., concur.